## Pissott Estate

*Joseph V. Kasper*, for accountants.
*Andrew Hourigan, Jr.*, for trustee.

LOPATTO, P. J., April 14, 1967.— . . . At audit, counsel for The Miners National Bank of Wilkes-Barre, trustee of a one fifth residuary interest in decedent's estate of which Helen P. Smith is beneficiary, asked that executors be surcharged for their delay in filing the account and that the amount of such surcharge be paid counsel on account of costs advanced and his fee in the preparation of a citation which was

directed to executors to show cause why their account should not be filed. Counsel seeks $10 for out-of-pocket expenses and a $250 fee. Counsel for trustee also charges impropriety in certain risk distributions for which executors should suffer surcharge.

Decedent died June 27, 1965. The first complete advertisement of the grant of letters was on February 11, 1966. Upon a petition of trustee, this court, on November 16, 1966, awarded a citation directed to executors to show cause why an accounting of their administration of decedent's estate should not be filed. Executors filed written answer thereto on December 5, 1966. Other than the pleadings, nothing appears of record in respect to this citation. On January 12, 1967, the account of executors was filed. This account shows that in February of 1966, executors distributed to themselves $11,367.86 each on account of their distributive shares as residuary legatees and, in February and March of 1966, distributed $5,000 each to Celia O'Donnell and Miriam McLaughlin respectively. To date, a year later, no distribution has been made to trustee. Trustee charges that such distributions exhibited "bad faith" on the part of executors.

Executors contend that the delay in the filing of their account was occasioned by their application for a refund of certain taxes which they paid the Internal Revenue Service. It is significant to note that the taxes they sought refunded were paid by them erroneously. (Since the filing of the account, this refund was received.) They deny the charges of "bad faith" and point emphatically to certain advances made by one of them as evidencing the contrary. The account does reflect advances totalling $5,775.12 from a joint savings account and insurance proceeds by Carmelita Pissott and of monies with which the family exemption was paid by Miriam McLaughlin and Carmelita Pissott. Whether Carmelita Pissott was required to

make such advances, as trustee has averred, is academic, because she did in fact make such advances voluntarily. Trustee would have to agree, we think, that Miss Pissott's conduct at least obviated the necessity of litigation over her right to retain these monies in her individual capacity. Executors felt justified in making the risk distributions to themselves as residuary legatees entitled thereto, and particularly so in view of the fact that they made the same offer of risk distribution to trustee which was declined in the absence of a formal accounting. The risk distribution to Celia O'Donnell and Miriam McLaughlin made at or about the same time, however, was less than what they paid out themselves.

In addition, executors complain that the fee sought by counsel of $250 is excessive in view of the services that were rendered.

While the conduct of executors must be censured by the court, we hesitate to surcharge them for what appear to be mistakes in judgment. It has not been alleged that the assets held by accountants were in jeopardy of being dissipated, and neither fraud nor gross negligence has been imputed. Delay alone is not surchargeable.

The record indicates that executors sought to administer decedent's estate without benefit of legal counsel and did so up until the point they were cited to file an account. The account filed reflects an attorney fee credit for only partial representation of the estate and is represented at one half the minimum fee ordinarily taken. Had executors engaged counsel earlier, it is safe to assume that they would not have incorrectly paid taxes, which was the major cause of delay; nor would they have been permitted to make such inequitable risk distribution. In short, this entire unpleasantness would have been avoided if executors had had the foresight to engage counsel earlier.

Trustee, of course, had not only the right, but indeed the duty to proceed as it did in order to protect the interest of the residuary beneficiary whom it represents. As it turned out, the steps which they took enured to the benefit of others as well who have a common interest in the residue.

While it is a general rule that each litigant must pay his own counsel for services in connection with the audit of a decedent's estate, a deviation from the general rule may be permitted in exceptional cases, in view of the peculiar facts and circumstances surrounding them, where the services rendered in securing an accounting and audit benefited all interested parties and were of assistance to the court: Partridge-Remick Pa. O. C. Practice, vol. 5, p. 527, §39.10. Where counsel representing the residuary beneficiary, who, by citation, compelled the executors to file an account, a fee was allowed him from the estate: Heckman's Estate, 57 Montg. 310.

The minimum fee schedule adopted by the Luzerne County Bar Association provides a fee of $50 for the preparation of a petition for citation to file an account, and executors concede that counsel is entitled to an additional $50 for attendance at audit. The court is familiar, however, with the services which were rendered by counsel in his efforts to secure an accounting, not the least of which were conferences with the court. Under the circumstances, the court feels that a fee of $200 is reasonable.

Accordingly, request for surcharge is denied; fee of Andrew Hourigan, Jr., Esquire, counsel for the Miners National Bank, trustee, payable from the estate of decedent, is allowed in the amount of $200, and same is directed to be paid; and reimbursement for out-of-pocket expenses amounting to $10 is directed to be made to Andrew Hourigan, Jr., Esquire.

Our decision, as that reached in Grossman's Estate,

39 D. & C. 553, is influenced by the peculiar facts and circumstances surrounding this case, and is not to be regarded as a precedent to vary the general rule that each litigant must pay his own counsel. . . .